## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Westchester Fire Insurance Company,
a New York corporation,

                                        Plaintiff,

                                                        Civ. No. 07-2145 (RHK/AJB)
                                                        **MEMORANDUM OPINION
                                                        AND ORDER**

v.

Douglas Wallerich, Patrick Lowther, and
Sharon O'Reilly,

                                        Defendants.

Jeffrey M. Thompson, Dorothy M. Jaworski Paxton, Meagher & Geer, PLLP,
Minneapolis, Minnesota, for Plaintiff.

Paula D. Vraa, Larson · King, LLP, St. Paul, Minnesota, for Defendants.

### INTRODUCTION

This case involves an insurance-coverage dispute. Plaintiff Westchester Fire

Insurance Company ("Westchester") filed this declaratory-judgment action against

Defendants Douglas Wallerich, Patrick Lowther, and Sharon O'Reilly, seeking a

determination as to whether it must provide coverage to them in defending an underlying

lawsuit. Westchester also seeks reimbursement of the expenses it has paid thus far in

defense of that lawsuit. Defendants answered and counterclaimed for coverage fees for

Westchester's initial denial of coverage and for defending this declaratory-judgment

action. Westchester now moves for summary judgment on the grounds that the "Insured

v. Insured" exclusion in the insurance policy precludes coverage.  For the reasons set

forth below, the Court will grant Westchester's Motion in part.

## BACKGROUND

### I.     The Jewel Partnership

In 1996, Defendants formed the partnership Jewel of the Mississippi, LLP ("Jewel

Partnership") with Mark Fayette, Shayna Fayette, and others, for the purpose of acquiring

and developing the Jewel Nursery property in Lake City, Minnesota.  (Wallerich Aff.

¶ 7.)  Mark Fayette and Shayna Fayette each owned 9.3 percent of the partnership.  (Id.)

Mark Fayette and Shayna Fayette are married, but each had separate voting rights and

partnership benefits.  (Id.)  In addition, each made separate cash contributions and

contributed separately to a convertible-debt program.  (Id. ¶ 8.)

In July 2002, the Jewel Partnership and Hale Irwin Golf Properties, LLC ("HIGP")

formed the Residences at the Jewel, LLC ("the Residences") to develop the property for

commercial and residential use.  The Jewel Partnership owned an 85% interest in the

Residences and HIGP owned the remaining 15%.[1]  (Id. ¶ 9.)  In addition to being

investors, Mark Fayette and Defendants held various officer and director positions within

the Residences from July 2002 until its dissolution on December 28, 2006.  (Wallerich

Aff. Ex. A.)  Shayna Fayette, however, was never an officer, director, or employee of the

Residences.  (Id. Ex. B.)

---

[1] HIGP received its 15% interest in the Residences in exchange for designing and managing the
Residences' golf operations.  (Wallerich Aff. ¶ 9.)

**II.     The Policy**

On September 20, 2006, Wallerich, in his capacity as Chief Manager of the

Residences, filed an application with Westchester for a business and management

indemnity insurance policy.  (Wallerich Aff. Ex. A.)  Westchester issued the Policy to the

Residences, with effective dates of October 19, 2006 to October 19, 2007.  (Id.)  Two

sections of the Policy are relevant to the issues in this case:  the "General Terms and

Conditions" section and the "Directors, Officers, and Company Indemnity Coverage"

("D&O") section.  (Bigger Aff. Ex. 1 at 007, 013.)

**A.     General Terms and Conditions**

The General Terms and Conditions "apply to each and every Coverage Section of

[the] **Policy**.  The terms and conditions of each Coverage Section apply only to that

Coverage Section and shall not be construed to apply to any other Coverage Section."

(Id. at 007).  The Definitions section of the General Terms and Conditions explains that:

> Whenever used in this **Policy**, the terms that appear below in **boldface** type
> shall have the meanings set forth in this Definitions subsection of the
> General Terms and Conditions. *However*, if a term also appears in **boldface**
> type in a particular Coverage Section and is defined in that Coverage
> Section, that definition shall apply for purposes of that particular Coverage
> Section.    Terms that appear in **boldface** in the General Terms and
> Conditions but are *not defined in this Definitions subsection* and are defined
> in other Coverage Sections of the **Policy** *shall have the meanings ascribed
> to them in those Coverage Sections*.

(Id. (emphasis added).)

Finally, the General Terms and Conditions section contains a clause dealing with

"spouses," which provides in pertinent part:

> The . . . spouses . . . of natural persons who are **Insureds** shall be considered **Insureds** under this **Policy**; *provided, however,* coverage is afforded to such . . . spouses . . . *only for a **Claim** arising solely out of their status as such* and, in the case of a spouse . . . where the **Claim** seeks damages from marital community property, jointly held property or property transferred from the natural person who is an **Insured** to the spouse . . . .

(Id. at 010 (emphases added).)

## B.    D&O Section

The insuring clause of the D&O section provides that: "**Insurer** shall pay the **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the **Company** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** . . . for any **Wrongful Act** taking place prior to the end of the **Policy Period**." (Bigger Aff. Ex. 1 at 013.)

"**Loss** means damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and Costs, Charges and Expenses incurred by the Directors and Officers under the Insuring Clause[] . . . ." (Id. at 014.) "**Cost, Charges, and Expenses** means reasonable and necessary legal costs, charges, fees and expenses incurred by any of the Insureds in defending Claims . . . ." (Id. at 013-014.) **Claim** is defined in pertinent part as "a civil proceeding against any Insured seeking monetary damages, or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading." (Id. at 013.) "**Wrongful act** means any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly

committed or attempted by: any of the **Directors or Officers** while acting in their capacity as such . . . ."  (Id.)

The D&O section defines "**Insureds**" as "the **Company** and the **Directors and Officers**."  (Id. at 014.)  Finally, the D&O coverage section contains an "Insured v. Insured" exclusion, which provides:

> **Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim**:
>
>     * * * *
>
> e) brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity, any **Outside Entity** or any person or entity that is an owner of or joint venture participant in any **Subsidiary** in any respect and whether or not collusive, unless such **Claim**:
>
> > (i)      is brought derivatively by a securities holder of the **Parent Company** and is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any **Insured**[.]

(Id. at 016.)

## III.  The Underlying Fayette Action

On February 1, 2007, Mark Fayette and Shayna Fayette, individually and on behalf of the Residences, filed a lawsuit in Minnesota state court against Defendants alleging breach of various fiduciary duties in connection with the management and auction of certain residential and commercial properties held by the Residences.  (Levine Decl. Ex. 1.)  Defendants timely notified Westchester of this lawsuit and sought coverage for their defense.  (Wallerich Aff. ¶ 1.)  In response, Westchester denied coverage and refused to defend Defendants.  (Id. ¶¶ 2-3.)  Defendants then hired coverage counsel who

5

urged Westchester to reconsider its position.  (Id. ¶ 2.)  On April 26, 2007, Westchester

changed its position; it agreed to defend Defendants against the Fayette lawsuit, subject

to a full reservation of rights, including the right to file a declaratory-judgment action,

challenging its obligation to defend Defendants in that case.  (Id. ¶ 5.)

Thereafter, Westchester filed this declaratory-judgment action, seeking a

determination that it owes no coverage to Defendants.  Westchester also asserts that it is

entitled to reimbursement for the fees and costs it has incurred to date in defending the

underlying Fayette action.  Defendants have counterclaimed for coverage fees, which

they have incurred as a result of Westchester's initial denial of coverage as well as for

defending this declaratory-judgment action.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the

nonmoving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the

material facts in the case are undisputed.  Celotex, 477 U.S. at 322; Mems v. City of St.

Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The Court must

view the evidence, and the inferences that may be reasonably drawn from it, in the light

most favorable to the nonmoving party.  Graves v. Ark. Dep't of Fin. & Admin., 229

F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116

(8th Cir. 1997).  The nonmoving party may not rest on mere allegations or denials, but

must show through the presentation of admissible evidence that specific facts exist

creating a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

There is no dispute that Mark Fayette and Defendants are "Insureds" under

the Policy, as each held officer and/or director positions within the Residences.

There is a dispute, however, as to whether Shayna Fayette is an "Insured" under

the Policy (as the spouse of Mark Fayette), and hence, whether the "Insured v.

Insured" exclusion is applicable here.

## I.      Interpretation of Insurance Policies

State law governs the interpretation of insurance policies.[2]  Nat'l Union Fire Ins.

Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003).  Under

Minnesota law, the interpretation of an insurance policy is a question of law for the

Court.  Watson v. United Servs. Auto. Ass'n, 566 N.W.2d 683, 688 (Minn. 1997).  When

an insurance policy's language is unambiguous, the Court interprets that language "in

accordance with its plain and ordinary meaning."  Ill. Farmers Ins. Co. v. Glass Serv. Co.,

683 N.W.2d 792, 799 (Minn. 2004).  When an insurance policy's language is ambiguous,

however, the Court will generally construe that language against the drafter and in favor

---

[2] Neither party has argued that another state's law governs the Policy.  Indeed, both parties assert
that Minnesota law applies.  See BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir.
2003) (law of forum state applies by default where parties do not raise choice-of-law issue).

of the insured.  Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000).

## II.     Duty to Defend

An insurer's duty to defend is broader than the duty to indemnify in three ways: "(1) the duty to defend extends to every claim that 'arguably' falls within the scope of coverage; (2) the duty to defend one claim creates a duty to defend all claims; and (3) the duty to defend exists regardless of the merits of the underlying claims." Wooddale Builders, Inc. v. Maryland Cas. Co., 722 N.W.2d 283, 302 (Minn. 2006) (citations omitted).  An insurer seeking to avoid its duty to defend has the burden of demonstrating that all claims fall outside the scope of the insurance policy.  Metropolitan Prop. & Cas. Ins. Co. v. Miller, 589 N.W.2d 297, 299 (Minn. 1999).

With these principles in mind, the Court will address whether Shayna Fayette is an "Insured" under the Policy and whether the "Insured v. Insured" exclusion precludes coverage for the underlying lawsuit.

## III.    Shayna Fayette is Not an "Insured" under the Policy

Westchester asserts that Shayna Fayette is an "Insured" under the D&O Policy and, therefore, her claims against Defendants are barred by the "Insured v. Insured" exclusion.[3]  It relies on the General Terms and Conditions section, which provides that "[t]he . . . spouses . . . of natural persons who are **Insureds** shall be considered **Insureds** under this **Policy**."  (Bigger Aff. Ex. 1 at 010.)

---

[3] As explained earlier, there is no dispute that Mark Fayette is an "Insured" under the Policy.

First, the Court must look to the language of the Policy to determine whether Shayna Fayette is an Insured.  The D&O section of the Policy defines the term "**Insureds**" to mean "the **Company** and the **Directors and Officers**."  (Id. at 014.)  The General Terms and Conditions section, however, provides that a spouse is an Insured under the Policy.  Thus, there is an ambiguity here because the definition of an Insured is subject two different meanings.[4]  Westchester argues that the General Terms and Conditions apply to each and every section of the Policy and, accordingly, spouses are considered Insureds under the D&O section of the Policy.  (Pl.'s. Reply Mem. at 4-5.)  But, the Definitions section of the General Terms and Conditions contradicts this language – it states in pertinent part "that Terms that appear in **boldface** in the General Terms and Conditions but are *not defined in this Definitions subsection* and are defined in other Coverage Sections of the **Policy** shall have the meanings ascribed to them in those Coverage Sections."  (Bigger Aff. Ex. 1 at 007 (emphasis added).)  The term "**Insureds**" is <u>not</u> defined in the General Terms and Conditions section.  That term is only defined in the D&O coverage section, and is defined there to mean "the **Company** and the **Directors and Officers**."  (Id. at 014.)  Nowhere does this definition include spouses.  Furthermore, it is undisputed that Shayna Fayette was never a director, officer, or employee of the Residences.  Because the term "**Insureds**" is defined in the D&O Coverage Section, that definition is the only definition applicable to the D&O Coverage

---

[4] When an insurance policy's language is ambiguous, the Court generally construes that language against the drafter and in favor of the insured.  <u>Nathe Bros.</u>, 615 N.W.2d at 344.

Section and to its exclusions, including the "Insured v. Insured" exclusion.  Had Westchester intended to cover spouses as **"Insureds"** under the D&O policy it could have included spouses in that definition.  It did not.  Accordingly, the Court concludes that Shayna Fayette is not an "Insured" under the D&O Policy.

**IV.    The "Insured v. Insured" Exclusion Precludes Coverage**

Defendants assert that, because Shayna Fayette is not an "Insured" under the D&O Policy, the "Insured v. Insured" exclusion does not apply, and as a result, Westchester must defend the entire lawsuit.  In response, Westchester contends that even if Shayna Fayette is not an "Insured" under the D&O Policy, the "Insured v. Insured" exclusion precludes coverage for the entire underlying lawsuit because Mark Fayette is a plaintiff in the underlying lawsuit and is an "Insured" under the D&O Policy.

"Insured v. Insured" exclusions are common in Director and Officer liability insurance policies.  See Murray v. Loewen Group, 133 F. Supp. 2d 1110, 1117 (E.D. Wis. 2001).   The purpose of an "Insured v. Insured" exclusion is to prevent collusion, "such as suits in which a corporation sues its officers and directors in an effort to recoup the consequences of their business mistakes . . ., thus turning liability insurance into business-loss insurance . . . ."  Level 3 Commc'ns, Inc. v. Fed. Ins. Co., 168 F.3d 956, 958 (7th Cir. 1999) (internal citations omitted) (citing Twp. of Ctr., Butler County, Pa. v. First Mercury Syndicate, Inc., 117 F.3d 115, 119 (3d Cir. 1997)).

Here, the Policy excludes coverage for "any **Claim** . . . brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity . . .

10

whether or not collusive . . . ."  (Bigger Aff. Ex. 1 at 016.)  It is undisputed that Mark

Fayette is an "Insured" under the Policy.  However, as determined above, Shayna Fayette

is not an "Insured" under the Policy.  Thus, the Court must decide whether the presence

of a non-insured joined with an "Insured" in the underlying action defeats the "Insured v.

Insured" exclusion.[5]  The Court has found no cases in Minnesota addressing whether an

"Insured v. Insured" exclusion bars coverage for an underlying lawsuit brought by both

an insured and non-insured plaintiff.   However, cases from other jurisdictions do provide

some, albeit conflicting, guidance on this issue.

Defendants rely on Bodewes v. Ulico Casualty Co., 336 F. Supp. 2d 263, 276-77

(W.D.N.Y. 2004), for the proposition that an insurer's duty to defend, under New York

law, requires the insurer to defend the entire action despite the presence of both insured

and non-insured plaintiffs in the underlying suit.  The Court in Bodewes explained that

the facts and circumstances of that case were similar to the Level 3 decision from the

Seventh Circuit.  Bodewes, 336 F. Supp. 2d at 277.

Level 3 involved a claim for coverage under a D&O policy for costs incurred by

the insured corporation in defending a securities-fraud lawsuit brought by several

minority shareholders.  168 F.3d at 957.  A former director of a subsidiary of the insured

corporation joined the underlying lawsuit as a plaintiff six months after it was filed, and

_____

[5] If the Court were to find that Shayna Fayette is an "Insured" under the Policy, there is no
question that the "Insured v. Insured" exclusion would bar coverage in this case.

the insurance company denied coverage based on the "Insured v. Insured" exclusion in the policy.  Id. at 957-58.

Critical to Level 3's analysis was the lone insured plaintiff who joined the lawsuit six months after it was filed.  The Seventh Circuit concluded that the exclusion would lead to the "odd result that a claim fully covered when made could become fully uncovered when another plaintiff was permitted to join it."  Id. at 960.  The court held that the claims of the former director were not covered, but that the claims of the remaining plaintiffs were, taking note of the policy's allocation clause, which allowed for an appropriate proportion of a judgment or settlement amount to be allocated to the uninsured plaintiffs.  Id. at 960-61.

Defendants also rely on Megavail v. Illinois Union Insurance Co., No. 05-1374-AS, 2006 WL 2045862, at *2 (D. Or. July 19, 2006) (applying Oregon law).  In Megavail, an insured corporation sued its insurer for breach of contract and indemnity after the insurer declined to defend the corporation in an action brought by its shareholders.  Id. at *1.  Two of the six plaintiffs in the underlying lawsuit were former officers and directors and were therefore considered "insureds" under the insurance policy.  Id.  The insurance company claimed that the "Insured v. Insured" exclusion barred coverage.  Id.  The district court found that the underlying lawsuit, which was not collusive, fell outside of the category of suits against which the insurance policy's so-called "Insured v. Insured" exclusionary clause was designed to protect.  Id. at *2.  It held that the insurer's duty to defend was triggered by the presence of four uninsured

shareholders even though two of the other plaintiffs were insured shareholders.  Id.  The

court reasoned that the allocation clause in the policy required allocation between

covered and uncovered losses, rather than barring all recovery because of the presence of

uncovered claims.  Id. at *3.

This Court concludes that the cases cited by Defendants are factually dissimilar to

the case here.  The Level 3 court did not find that the presence of an uninsured plaintiff,

alone, resulted in partial coverage.  To the contrary, the court stated:

> The contract . . . defines 'Claim' as 'a civil proceeding . . .,' and the district
> court thought this meant that if any of the plaintiffs were Insureds, there
> was no coverage . . . .  The presence of an Insured in the litigation could
> conceivably contaminate the entire litigation. . . . *But the contract deals
> with this problem in another way, by requiring allocation of covered and
> uncovered losses.*

Id. at 960 (emphasis added).  Similarly, critical to the court's analysis in Megavail, was

the (1) presence of an allocation clause in the insurance policy, and (2) determination that

the underlying lawsuit was not a collusive action.

The Court recognizes that under Minnesota law, an insurance company has a duty

to defend "when any part of the claim against the insured is arguably within the policy

scope."  Metropolitan, 589 N.W.2d at 299.  However, Minnesota courts must also apply

the language of an insurance policy as written.  Miller v. ACE USA, 261 F. Supp. 2d

1130, 1138-39 (D. Minn. 2003) (applying Minnesota law).  Here, the Policy does not

contain an allocation clause.  Furthermore, the language of the exclusion – "whether or

not collusive"- eliminates any inquiry into whether the underlying lawsuit was collusive.

Westchester relies on <u>Sphinx International, Inc. v. National Union Fire Insurance Co. of Pittsburgh, PA</u>, 226 F. Supp. 2d 1326 (M.D. Fla. 2002) and <u>PowerSports, Inc. v. Royal & Sunalliance Insurance Co.</u>, 307 F. Supp. 2d 1355 (S.D. Fla. 2004), as support for its contention that the "Insured v. Insured" exclusion bars coverage for an underlying lawsuit brought by both insured and non-insured plaintiffs. (Pl.'s Mem. at 14.)

In <u>Sphinx</u>, a former officer and director (an insured) and shareholders (non-insureds) filed a securities class action against the company. 226 F. Supp. 2d at 1329. The company sought coverage for the underlying lawsuit under its D&O policy, but its insurer invoked the "Insured v. Insured" exclusion and denied coverage. <u>Id.</u> The company then filed suit against the insurance company and sought a declaration of coverage. <u>Id.</u> The court held that the exclusion barred coverage for the entire action because of the presence of the insured plaintiff. <u>Id.</u> at 1336-37. The court distinguished <u>Level 3</u> on the ground that in <u>Sphinx</u>, the plaintiffs' claims were uncovered from the moment they were filed, whereas in <u>Level 3</u>, the exclusion would have turned a covered claim into an uncovered claim because an insured plaintiff joined the underlying lawsuit six months after it was filed. <u>Id.</u>

Likewise, the court in <u>PowerSports</u>, held that the "Insured v. Insured" exclusion barred coverage for the underlying suit by two former directors (insureds) and a non-insured. 307 F. Supp. 2d at 1359, 1362. The court found the case "more similar to <u>Sphinx</u> than <u>Level [3]</u> . . . . Unlike <u>Level [3]</u>, but like <u>Sphinx</u>, this action was uncovered

from the date it was filed . . . [and] the plain language of the [Insured v. Insured] clause bars coverage for the underlying action in its entirety." Id. at 1361.

Here, the Court determines that the underlying action was not covered from the date it was filed.  The Policy excludes coverage for "*any* **Claim** . . . brought or maintained by, on behalf of, in the right of, or at the direction of *any* **Insured** in any capacity . . . ." (Bigger Aff. Ex. 1 at 016 (emphases added).)  "**Claim**" is defined as "a civil proceeding against any **Insured**." (Id. at 013.)  It is undisputed that Mark Fayette is an "Insured" under the Policy and that he filed suit against Defendants in this case.  Consequently, this triggered the "Insured v. Insured" exclusion, which bars coverage for the "civil proceeding" in the underlying action.  "[W]here policy language is explicit and unambiguous, the court may not create ambiguity to afford coverage." General Mills, Inc. v. Gold Medal Ins. Co., 622 N.W.2d 147, 151 (Minn. Ct. App. 2001); accord Noran Neurological Clinic, P.A. v. Traveler's Indem. Co., 229 F.3d 707, 709 (8th Cir. 2000) (noting duty of interpreting courts to "fastidiously guard against the invitation to create ambiguities where none exist").

Defendants, however, argue that Westchester has a duty to defend the entire action because the "Insured v. Insured" exclusion is not applicable as Shayna Fayette is not an "Insured" under the Policy.  This, however, would effectively trump the unambiguous language of the "Insured v. Insured" exclusion and would be contrary to the intent of the parties.  The Policy does not contain an allocation clause; thus there is not a contractual basis for finding separate covered and uncovered claims, let alone coverage for the entire

action.  In the Court's view, for an insured to avoid the "Insured v. Insured" exclusion in

a D&O policy, there must be an allocation clause in the policy that specifically addresses

coverage for claims brought by both insureds and non-insureds in an underlying lawsuit.

The Court finds that the "Insured v. Insured" exclusion precludes coverage in this case

and Westchester owes no defense for the underlying Fayette lawsuit.

## V.     Reservation of Right to Seek Reimbursement for Defense Costs

The parties agree that the Minnesota Supreme Court has not dealt with the issue of

an insurer's right to recover defense costs incurred before an adjudication of coverage.

The Court must therefore predict how the Minnesota Supreme Court would rule on this

issue based on the circumstances presented here.  See Marvin Lumber & Cedar Co. v.

PPG Indus., Inc., 401 F.3d 901, 917-18 (8th Cir. 2005) (in absence of precedent from

state's highest court, court must predict what that court would do).

Most courts appear to allow insurers to seek reimbursement pursuant to a

unilateral reservation of rights, on the theory that the reservation creates an implied

contract when the insured accepts the defense.  See, e.g., Buss v. Superior Court, 939

P.2d 766, 776-78 (Cal. 1997) (approving of the right).[6]  Some courts, however, refuse to

permit an insurer to recover defense costs pursuant to a reservation of rights, absent an

express provision to that effect in the insurance policy.  See, e.g., LA Weight Loss Ctrs.,

---

[6] The majority approach follows Buss.  See, e.g., Cincinnati Ins. Co. v. Grand Pointe, LLC,
__ F. Supp. 2d. __, 2007 WL 2301179, at *11-18 (E.D. Tenn. Aug. 10, 2007) (applying
Tennessee law; insurer entitled to reimbursement of defense costs under a reservation-of-rights
letter); United Nat'l Ins. Co. v. SST Fitness Corp., 309 F.3d 914, 922-23 (6th Cir. 2002)
(applying Ohio law; insurer was entitled to reimbursement of defense costs where insurer
reserved right to recover defense costs and insured accepted payment of defense costs).

Inc. v. Lexington Ins. Co., No. 1560, 2006 WL 689109, at *5 (Pa. Com. Pl. Mar. 1, 2006) (finding that unless the policy itself permits an insurer to recover defense costs, such a right may not be created by a reservation-of-rights letter because that would amount to a unilateral amendment of the policy by the insurer); General Agents Ins. Co. of Am. v. Midwest Sporting Goods Co., 828 N.E.2d 1092, 1101 (Ill. 2005) (refusing to permit insurer to recover defense costs pursuant to reservation of rights absent express provision to that effect in insurance contract); Shoshone First Bank v. Pac. Employers Ins. Co., 2 P.3d 510, 511 (Wyo. 2000) (same).

Westchester argues that the Court should follow Buss and the majority of courts that allow an insurer to recover defense costs when a court subsequently determines that an insured was not entitled to coverage. In Buss, the insured sought coverage for an underlying lawsuit that contained twenty-seven claims, only one of which was potentially covered. 939 P.2d at 769. The insurer agreed to defend its insured under a reservation of rights, including the right to recover its defense costs if the court determined that there was no coverage for that suit. Id. at 770. The court found that the insurer was obligated to defend the entire case to make sure the insured received a meaningful defense. Id. at 775. However, the Court also found that the insurer had the right to an allocation and reimbursement for defense costs for claims that were not potentially covered. Id. at 776. The court reasoned that the insurance policy did not require the insurer to defend against claims that were not potentially covered because the insured did not pay a premium for defense of such claims and the insurer did not bargain to bear these costs. Id. The court

explained that shifting these defense costs to the insurer would upset this arrangement, and therefore, found a right to reimbursement implied in law.  Id.

Westchester also argues that a unilateral reservation of rights on reimbursement is effective, even where the insured objects to reimbursement.  See Walbrook Ins. Co. Ltd. v. Goshgarian & Goshgarian, 726 F. Supp. 777, 783-84 (C.D. Cal. 1989) (finding that an implied agreement to the right to reimbursement was established where insured objected to insurer's reservation of rights to seek reimbursement of defense costs, but accepted insurer's payment to independent counsel). Westchester asserts that it expressly reserved the right to reimbursement, Defendants objected, but did accept the defense provided.  As such, Westchester argues that it is entitled to reimbursement.

Defendants, however, urge this Court to follow the minority rule as set forth in the Illinois Supreme Court's decision in General Agents, which "refused to permit an insurer to recover defense costs pursuant to a reservation of rights absent an express provision to that effect in the insurance contract between the parties."  828 N.E.2d at 1104.  The court concluded that this reimbursement right would permit an insurer to "unilaterally modify its contract" without any input from the insured.  Id. at 1102.  The Illinois Supreme Court reasoned that public policy dictates that an insurer not be allowed to recover defense costs from their insureds under a reservation of rights:

> The question as to whether there is a duty to defend an insured is a difficult one, but because that is the business of an insurance carrier, it is the insurance carrier's duty to make that decision. . . . [T]o allow the insurer to force the insured into choosing between seeking a defense under the policy, and run the potential risk of having to pay for this defense if it is subsequently determined that no duty to defend existed, or giving up all

meritorious claims that a duty to defend exists, places the insured in the position of making a Hobson's choice.   Furthermore, endorsing such conduct is tantamount to allowing the insurer to extract a unilateral amendment to the insurance contract.

Id. (quoting Shoshone, 2 P.3d at 514).  Similarly, the Fourth Circuit, applying Maryland law, rejected an insurer's right of reimbursement, finding that it would lead to a "backdoor narrowing of the duty to defend." Perdue Farms, Inc. v. Travelers Cas. & Sur. Co., 448 F.3d 252, 258 (4th Cir. 2006).  The court explained that Maryland law would not support a right of reimbursement because it would leave an insured with an "up-front defense whose line-item costs would then be the subject of subsequent litigation." Id. at 259.  The court concluded that it was "unwilling to grant insurers a substantial rebate on their duty to defend."  Id.

This Court finds persuasive those decisions refusing to allow reimbursement unless an agreement to the contrary is found in the insurance policy.  The Illinois Supreme Court accurately summarized the crux of this issue as follows:

> [W]hen an insurer tenders a defense or pays defense costs pursuant to a reservation of rights, the insurer is protecting itself at least as much as it is protecting its insured. Thus, we cannot say that an insured is unjustly enriched when its insurer tenders a defense in order to protect its own interests, even if it is later determined that the insurer did not owe a defense. *Certainly, if an insurer wishes to retain its right to seek reimbursement of defense costs* in the event it later is determined that the underlying claim is not covered by the policy, *the insurer is free to include such a term in its insurance contract.*

General Agents, 828 N.E.2d at 1103 (emphasis added) (citing Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213, 1219-20 (3d Cir. 1989).

Within our own circuit, cases applying Minnesota and Missouri law provide support for the contention that the Minnesota Supreme Court would refuse to allow reimbursement unless an agreement to the contrary is found in the insurance policy. The Eighth Circuit, applying Missouri law, has held that when the duty to defend is triggered, the insurer has a duty to defend the insured until a coverage determination is made. Liberty Mut. Ins. Co. v. FAG Bearings Corp., 153 F.3d 919, 924 (8th Cir. 1998).[7] The Eighth Circuit explained that the insurer remained obligated to defend its insured as long as any question remained as to whether the underlying claims were covered by the insurance policy. Id. Once the district court determined that such claims were excluded from coverage, then the insurer's duty to defend ended. Id.

Similarly, a decision from this District, applying Minnesota law, followed the reasoning in Liberty Mutual and found that even though the insurer included a right to seek reimbursement of its defense costs in a reservation-of-rights letter, the insurance policy did not specifically provide for reimbursement. Employers Mut. Cas. Co. v. Indus. Rubber Products, Inc., No. Civ. 04-3839, 2006 WL 453207, at *5-6 (D. Minn. Feb. 23, 2006) (Davis, J.).[8] Therefore, the Court held that "an *insurer is not entitled to*

---

[7] Although Liberty Mutual applied Missouri law to the scope of the duty to defend, this Court recognizes that Minnesota law has interpreted the duty to defend consistent with Missouri's interpretation. Employers Mut. Cas. Co. v. Indus. Rubber Products, Inc., No. Civ. 04-3839, 2006 WL 453207, at *6 (D. Minn. Feb. 23, 2006) (citing Brown, 293 N.W.2d at 825-26).

[8] A decision from this District initially determined that Minnesota might recognize an insurer's right to reimbursement of defense costs. See Knapp v. Commonwealth Land Title Ins. Co., 932 F. Supp. 1169, 1171-72 (D. Minn. 1996) (Davis, J.) ("where an insurer has properly met its duty and subsequently successfully challenges policy coverage, it should be entitled to the full benefit

*the reimbursement* of defense costs expended prior to the determination of coverage, *unless specifically provided for in the insurance policy*." Id. at *6 (emphasis added).[9]

Accordingly, this Court is of the view that the Minnesota Supreme Court would refuse to allow reimbursement unless an agreement to the contrary is found in the insurance policy. Here, the Policy does not contain a provision for reimbursement of defense costs in the event a court determines that Westchester owes no coverage. Thus, Westchester's reservation-of-rights letter could retain only those defenses that it had under the Policy. Consequently, Westchester's attempt to include the right to reimbursement in its reservation-of-rights letter must fail. Therefore, the Court will deny Westchester's Motion with respect to its claim for reimbursement of its defense costs.

## VI.   Defendants' Claim for Coverage Fees

In Minnesota, insurers are encouraged to resolve coverage disputes by assuming the defense of the insured in the underlying action and promptly bringing a separate declaratory-judgment action against the insured. Mut. Serv. Cas. Ins. Co. v. Luetmer, 474 N.W.2d 365, 369 (Minn. Ct. App. 1991) ("The Minnesota Supreme Court has repeatedly advised the use of a declaratory-judgment action in a reservation of rights situation."). Under Minnesota law, an insured may not recover attorneys' fees incurred

---

of such a challenge and be reimbursed for the benefits it bestowed, in good faith, to its insured"). However, the Knapp decision came before the Eighth Circuit's decision in Liberty Mutual.

[9] See also St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp., 457 F.3d 766, 773 (8th Cir. 2006) (applying Texas law and finding that insurer was entitled to reimbursement because insurer's reservation-of-rights letter was not unilateral, but was made pursuant to a separate agreement with the insured, in which the insurer agreed to relinquish a right it had under the policy in return for the reservation of the right to recover).

defending a declaratory-judgment action brought by his insurer, with two exceptions.

First, if either a statute or the insurance contract expressly provides for that recovery.

Rent-A-Scooter, Inc. v. Universal Underwriters Ins. Co., 173 N.W.2d 9, 12 (Minn. 1969).

Second, if the "insurer has breached the insurance contract in some respect[.]"  Am.

Standard Ins. Co. v. Le, 551 N.W.2d 923, 927 (Minn. 1996).   Such a breach usually

occurs when the insurer wrongfully fails to defend the underlying action.  Chicago Title

Ins. Co. v. F.D.I.C., 172 F.3d 601, 605 (8th Cir. 1999) (citing  Am. Standard, 551

N.W.2d at 927); see also In re Silicone Implant Ins. Coverage Litig., 667 N.W.2d 405,

422 (Minn. 2003) ("[I]n the insurance context, we have carved out a narrow exception to

the general rule: attorney fees are recoverable when an insurer breaches its duty to

defend.").

　　Here, Defendants sought insurance coverage for the defense of the underlying

Fayette lawsuit in February 2007, and Westchester denied coverage.  Consequently,

Defendants were forced to hire coverage counsel, who urged Westchester to reconsider

its position.  Westchester eventually changed its position and agreed to defend

Defendants, subject to a full reservation of rights, including the right to file a declaratory-

judgment action.  Defendants seek to recoup the coverage fees they incurred as a result of

Westchester's initial denial of coverage in the amount of $6,335.33.

　　 The issue before the Court is whether Westchester's initial denial of coverage

constituted a breach of its duty to defend.  Westchester argues that Defendants are not

entitled to recovery of these coverage fees because it had no duty to defend.  In particular,

Westchester asserts that the "Insured v. Insured" exclusion bars all coverage for the underlying lawsuit.  Westchester also argues that it has provided a defense to Defendants pending the resolution of the present action.  These arguments, however, fail to address Westchester's initial denial of coverage.

In Minnesota, the duty to defend is read broadly.  See Brown v. State Auto. & Cas. Underwriters, 293 N.W.2d 822, 825 (Minn. 1980).  Indeed, the duty to defend is triggered when any part of the claim "arguably" falls within the coverage of the policy. Wooddale Builders, 722 N.W.2d at 302.  Westchester's duty to defend was triggered the moment Defendants sought coverage for the underlying dispute because the claims at issue were "arguably" covered under the Policy.  As discussed above, it was not clear whether Shayna Fayette was an "Insured" under the Policy or whether the "Insured v. Insured" exclusion applied when the underlying action contained both an insured and non-insured plaintiff.  Thus, Westchester breached its duty to defend when it initially denied coverage.

Although Defendants did not move for summary judgment for the recovery of these fees, the Court enjoys the power to grant summary judgment *sua sponte* in these circumstances.  See, e.g., Madewell v. Downs, 68 F.3d 1030, 1048 (8th Cir. 1995) (district court may enter summary judgment *sua sponte* where party had adequate opportunity to address issues and was on notice that right to judgment as a matter of law was at issue).  Because the Court concludes that Defendants are entitled to recoup their coverage fees in the amount of $6,335.33, and because Westchester had an opportunity to

address the merits of this issue, there is no reason to delay awarding coverage fees to

Defendants merely because Defendants did not file a Motion seeking such relief.

Finally, Defendants also argue that they are entitled to recover their attorney's fees

in defending this declaratory-judgment action because Westchester has not faithfully

accepted its duty to defend, but has only grudgingly accepted the defense with an

extensive reservation of rights.  (Defs.' Resp. Mem. at 22.)  The Court disagrees.

Westchester's initial denial of coverage and its subsequent acceptance of the defense

under a reservation of rights are two separate acts and therefore must be analyzed

separately.  As described above, the Court determined that Westchester breached its duty

to defend when it initially denied coverage because it was unclear whether Shayna

Fayette was an "Insured" under the Policy and if the "Insured v. Insured" exclusion

barred coverage for the underlying action.  However, the Court has also determined in

this declaratory-judgment action that the "Insured v. Insured" exclusion precludes

coverage in this case and Westchester owes no defense for the underlying Fayette

lawsuit.  Therefore, Defendants are not entitled to recovery of their attorney's fees in

defending this declaratory-judgment action.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**ORDERED** that:

1. Westchester's Motion for Summary Judgment or, Alternatively, for Partial
   Summary Judgment (Doc. No. 7) is **GRANTED IN PART** and **DENIED IN PART** as follows:

a. Westchester's Motion is **GRANTED** as to Count One of its Complaint, and it is **DECLARED, ADJUDGED,** and **DECREED** that Westchester has no duty to defend or indemnify Defendants in the underlying Fayette litigation;

b. Westchester's Motion is **DENIED** as to Count Two of its Complaint for reimbursement of its defense costs in the underlying litigation;

c. Westchester's Motion for dismissal of Count 1 of Defendants' Counterclaims (Doc. No. 2), which seeks a declaration that Westchester has a duty to defend Defendants in the underlying litigation, is **GRANTED**;

d. Westchester's Motion for dismissal of Count 2 of Defendants' Counterclaims, which seeks coverage fees for Westchester's initial denial of coverage, is **DENIED**; and

e. Westchester's Motion for dismissal of Count 3 of Defendants' Counterclaims, which seeks attorney's fees for defending this declaratory-judgment action, is **GRANTED**; and

2. Summary Judgment is **GRANTED**, *sua sponte*, to Defendants in the amount of $6,335.33, with respect to Count 2 of their Counterclaims.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  September  25 , 2007

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge